JESSE KNABB
15161 Van Buren St, Unit 206
Midway City, CA 92655
(949) 274-6223
jesseknabb@gmail.com
PLAINTIFF, IN PRO PER

FILED

CLERK, U.S. DISTRICT COURT

March 25, 2026

CENTRAL DISTRICT OF CALIFORNIA

BY _____pd_____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JESSE KNABB, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF HUNTINGTON BEACH; ORANGE COUNTY HEALTH CARE AGENCY (OCHCA); CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, SANTA ANA, REGION 8; EEC ENVIRONMENTAL; MERCY HOUSE LIVING CENTERS, INC; MITSURU YAMADA; DOES 1-100, <br><br> Defendants, | **Case No.**:8:26-cv-00348-JWH-(ADSx) <br><br> AMENDED VERIFIED COMPLAINT FOR: <br><br> **1) VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA), 42 U.S.C. §6972(A)(1)(B) (IMMINENT AND SUBSTANTIAL ENDANGERMENT);** <br> **2) VIOLATIONS OF RCRA, 42 U.S.C. § 6972(A)(1)(A) (ILLEGAL DISPOSAL);** <br> **3) DECLARATORY AND INJUNCTIVE RELIEF.** <br><br> JURY TRIAL DEMANDED |

**AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)**

Plaintiff JESSE KNABB, in pro per, alleges as follows:

# TABLE OF CONTENTS

**EXECUTIVE SUMMARY**................................................................

 **I. INTRODUCTION**.................................................. **1**

**II. JURISDICTION AND VENUE**........................................ **2**

**III. RCRA NOTICE**................................................. **2**

**IV. PRIOR LITIGATION & RES JUDICATA ANALYSIS**.................................... **3**

**V. STANDING**........................................................ **3**

    A. Injury-in-Fact............................................. 4

    B. Traceability and Ongoing Exposure........................................ 4

        1. Groundwater Migration Pathway...................................... 4

        2. Airborne Toxic Dust Pathway......................................... 5

    C. Redressability............................................. 6

**VI. PARTIES**........................................................ **7**

**VII. FACTUAL ALLEGATIONS**....................................... **8**

    A. Historical Contamination and Institutional Knowledge..................... 8

    B. Fraudulent RAS Forms and Unauthorized Regulatory Initiation.............. 10

    C. Ultra Vires Retention of Jurisdiction.................................... 10

    D. GeoTracker Record Suppression and Document Irregularities................ 11

    E. Fabricated Fieldwork: EEC's July 2020 Access Admissions.................. 12

    F. The Void Ab Initio Closure Certificate................................... 12

    G. Ongoing Illegal Disposal Mechanisms..................................... 12

    H. Airborne Toxic Dust Pathway and Substandard Cap......................... 13

    I. Photographic Evidence: No April 2020 Fieldwork on Beach Parcel........... 13

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

J. Litigation-Grade Hydrogeologic Diagrams Supporting Cr(VI) Migration Pathway……………………………… 16

K. Hydrogeology and Cr(VI) Detections………………….17

**VIII. CLAIMS FOR RELIEF................................................................ 20**

First Claim for Relief– RCRA § 6972(a)(1)(B)............................... 20

Second Claim for Relief – RCRA § 6972(a)(1)(A)............................. 22

**PRAYER FOR RELIEF................................................................ 23**

**VERIFICATION....................................................................... 25**

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2………… 25**

**EXHIBIT INDEX..........................................................................**

**EXHIBITS 1-19..................................................................**

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

**EXECUTIVE SUMMARY**

This case arises from the City of Huntington Beach's ("City") approval, construction, and operation of a 174-bed Navigation Center on land the City knew was contaminated with hexavalent chromium, lead, arsenic, organochlorine pesticides, an abandoned cesspool, and an abandoned 140-foot domestic well (Well W-4150). The City's own historical records—including a 1979 Notice of Completion for the Michael Drive Storm Drain (CC-435)—show that the City engineered and maintained the drainage basin that repeatedly deposited industrial contaminants onto the Cameron Lane parcel. The City therefore possessed decades of institutional knowledge regarding the basin's hydrology, flooding patterns, and contamination risks.

In 2020, during the COVID-19 emergency, the City and the Orange County Health Care Agency ("OCHCA") engaged in a series of procedural shortcuts to obtain rapid environmental clearance. Newly obtained OCHCA COVID-19 Activity Logs confirm that OCHCA initiated regulatory review, communicated directly with the Department of Toxic Substances Control ("DTSC"), and transmitted incomplete data that resulted in DTSC declining jurisdiction. OCHCA then contacted the Regional Water Quality Control Board ("RWQCB"), which also declined. OCHCA subsequently assumed jurisdiction despite mandatory DTSC oversight under Health & Safety Code § 101480 and SB 1248. OCHCA's own logs show that hexavalent chromium exceeded residential screening levels, yet OCHCA issued a closure letter without laboratory data, without a Site Assessment Report, and without the required 30-day public notice.

Additional evidence—including OCHCA's 2025 Case Log, Orange County Water District's ("OCWD") well logs for W-4150, and the City's 2021 record-destruction authorizations—

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

demonstrates a pattern of regulatory evasion, record suppression, and concealment. The OCWD well log confirms that Well W-4150 is a 140-foot domestic well with high-permeability gravel zones, located 25 feet west of Cameron Street. The well remains unsealed, providing a direct conduit from contaminated soil into the regional groundwater basin. The City's installation of unlined StormTech infiltration chambers and its daily high-pressure washing practices actively mobilize contaminants downward and offsite. Groundwater flow data from OCWD shows that the Talbert Barrier creates an inland gradient that carries groundwater northeast toward Midway City, where Plaintiff now resides.

Because the City bypassed CEQA, DTSC, OCHCA protocols, and its own hazardous-materials regulations, the Navigation Center was constructed and operated on contaminated land without proper investigation, mitigation, or monitoring. The unsealed well, abandoned cesspool, unlined infiltration system, contaminated soil, and ongoing discharges create an imminent and substantial endangerment to human health and the environment. Plaintiff, a former resident who suffered documented medical injuries consistent with toxic exposure, seeks equitable relief requiring lawful investigation, remediation under DTSC oversight, sealing of the documented cesspool, sealing of Well W-4150, cessation of unpermitted discharges, and implementation of institutional controls necessary to abate the endangerment.

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

# I. INTRODUCTION

1. Plaintiff Jesse Knabb brings this citizen suit under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A) and (B), against the City of Huntington Beach ("City"), the Orange County Health Care Agency ("OCHCA"), the California Regional Water Quality Control Board, Santa Ana Region ("RWQCB"), EEC Environmental ("EEC"), Mercy House Living Centers, Inc. ("Mercy House"), Mitsuru Yamada, and unnamed coconspirators.

2. This action arises from Defendants' approval, construction, and operation of a 174-bed homeless Navigation Center on two adjacent parcels (17631 Cameron Lane and 17642 Beach Boulevard, Huntington Beach, CA) that the City knew were contaminated with hazardous substances—including hexavalent chromium at 49 times health-protective thresholds, lead, arsenic, toxaphene, and 4,4′-DDE—and that contained an abandoned cesspool and an unsealed 140-foot domestic well (Well W-4150). Despite decades of institutional knowledge, Defendants engaged in a coordinated scheme to bypass mandatory regulatory oversight, fabricate environmental reports, and conceal contamination, resulting in an unlawful closure determination and ongoing endangerment.

3. Plaintiff resided at the Navigation Center from November 2022 through October 2024 and suffered documented acute and chronic injuries consistent with toxic exposure. He now resides approximately two miles downgradient in Midway City, where he continues to be exposed through contaminated groundwater migration and airborne toxic dust. He seeks declaratory and injunctive relief to compel lawful investigation, remediation, sealing of the well and cesspool, cessation of unpermitted discharges, and implementation of institutional controls.

- 1 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

## II. JURISDICTION AND VENUE

4.  This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law—specifically, RCRA's citizen-suit provision, 42 U.S.C. § 6972(a)(1)(A)– (B).

5.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the contaminated site is located in Huntington Beach, California, within the Central District, and all relevant events occurred here.

## III. RCRA NOTICE

6.  On or about September 21, 2025, Plaintiff served written notice of violations on all Defendants, the Administrator of the U.S. Environmental Protection Agency, and the California Attorney General, as required by 42 U.S.C. § 6972(b) and 40 C.F.R. Part 254. More than 90 days have elapsed, and neither the EPA nor the State has commenced diligent prosecution. A petition before the State Water Board (File No. A-2926) was placed in abeyance on February 23, 2026, and does not bar this suit. (Exhibit 1.)

## IV. PRIOR LITIGATION & RES JUDICATA ANALYSIS

7.  In 2024, Plaintiff filed administrative complaints with the California Civil Rights Department (CRD Nos. 202404-24292310, 202409-26401826) alleging disability-based housing discrimination relating to pharmacy access and reasonable accommodations at the Navigation Center.

8.  In January 2025, Plaintiff settled those complaints for $6,000. The settlement expressly released only claims under FEHA, the Unruh Civil Rights Act, the Disabled Persons Act, and the Fair Housing Act. (Exhibit 2.) It did not release RCRA claims.

- 2 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

9.  Under the Ninth Circuit's "same transaction" test, *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982), res judicata does not bar this action because:

a.  **Different rights:** The prior action involved civil rights and disability accommodations; this action involves the right to a safe environment free from hazardous waste under RCRA.

b. **Different evidence:** The prior action relied on shelter policies and ADA compliance records; this action relies on OCHCA COVID-19 Activity Logs, DTSC soil data, hydrogeological models, and metadata proving forgery of Remedial Action Supervision ("RAS") forms.

c. **Different transactional nucleus:** The operative facts giving rise to RCRA claims— including forged signatures, dual GeoTracker records, suppression of hexavalent chromium data, and the existence of Well W-4150—were fraudulently concealed by Defendants and only discovered post-settlement through California Public Records Act ("CPRA") disclosures and metadata analysis. Fraudulent concealment independently defeats preclusion. *See, e.g., Guerrero v. Dep't of Corr.*, 2012 WL 13006058 (C.D. Cal. Sept. 5, 2012).

10.  Because the foundational facts were hidden from Plaintiff, the prior settlement  does not bar this suit.

## V. STANDING

11.  Plaintiff has Article III standing because he suffers concrete and particularized injuries that are fairly traceable to Defendants' conduct and redressable by the injunctive relief sought.

- 3 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

## A. Injury-in-Fact

12.  Plaintiff resided at the Navigation Center from November 2022 through October 2024, where he was directly exposed to hazardous substances, including hexavalent chromium at 980 µg/kg (49 times the health-protective threshold), lead, arsenic, toxaphene, and 4,4′DDE. (Exhibit 6.)

13.  Plaintiff's medical records document acute and chronic injuries consistent with exposure to nephrotoxic and hematologic toxicants: pneumonitis, pleural effusion, renal impairment, sepsis, pneumonia, empyema, microcytic anemia, eosinophilia, and the need for thoracentesis. (Exhibit 5.) Hexavalent chromium is a Group 1 human carcinogen with latency periods of years to decades; thus, Plaintiff faces a continuing risk of latent and progressive disease.

14.  Plaintiff now resides at 15161 Van Buren St., Unit 206, Midway City, CA 92655—approximately two miles northeast of the Site—and continues to be exposed via two active pathways.

## B. Traceability and Ongoing Exposure

*(1) Groundwater Migration Pathway*

15.  The Site sits atop the Orange County Groundwater Basin (Basin 8-1). The Orange County Water District ("OCWD") maintains the Talbert Seawater Barrier, a series of 36 injection wells that continuously pump highly purified recycled water into multiple aquifer zones to prevent seawater intrusion. (Exhibit 21; OCWD Groundwater Management Plan 2015 Update at 4-12.) This injection creates a powerful inland hydraulic gradient that forces shallow and principal aquifer groundwater northeast from the Huntington Beach mesa toward Midway City. (Exhibit 22; OCWD 2023-24 Engineer's Report at 3-8.)

16.  The shallow aquifer beneath the Site is hydraulically connected to the principal aquifer, which supplies drinking water to municipalities including Midway City. (Exhibit 23; OCWD 2022-23 Engineer's Report at 5-10.) Plaintiff's residence is served by the Midway City Mutual

- 4 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

Water Co., which extracts groundwater directly from the downgradient portion of the basin. (Exhibit 24; OCWD 2023-24 Engineer's Report, Table 4-2.)

17. Three engineered features actively accelerate contaminant migration:

a. **Unsealed Well W-4150:** This 140-foot domestic well, located 25 feet west of Cameron Street, remains unsealed and penetrates high-permeability gravel zones. It provides a direct conduit from contaminated soil to the regional aquifer. (Exhibits 7, 14.)

b. **Unlined StormTech Infiltration System:** The City installed unlined infiltration chambers directly into contaminated soil. During every storm event, these chambers drive soluble contaminants—including hexavalent chromium—downward toward the water table. (Exhibit 8.)

c. **NPDES Permit Expiration:** The Site's NPDES stormwater permit (Order No. R82009-0030) expired August 20, 2020—one day before the closure certificate was issued—and has not been renewed. Unpermitted discharges continue.

18. OCWD monitoring well MW-9, located approximately 1.5 miles downgradient, has detected hexavalent chromium concentrations exceeding  background levels, confirming that a plume from the Site is actively migrating northeast. (Exhibit 25; OCWD 2024 Annual Report at 12.)

*(2) Airborne Toxic Dust Pathway*

19. The Site's asphalt cap is only two inches thick, underlain by loose gravel—a substandard installation that violates City Specification No. 431-92 and Huntington Beach Municipal Code § 230.92. (Exhibit 20.) The City spent $1.2 million to fully excavate contaminated soil and install a permanent cap at City Hall in 2008, yet spent only $128,000 on the Navigation Center's inadequate cap, which serves a vulnerable, low-income, and majority-disabled population. (Exhibit Y.)

- 5 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

20. Defendant Mercy House conducts daily high-pressure washing of the cap. This practice degrades the thin asphalt, aerosolizes hexavalent chromium and lead-laced soils, and generates contaminated dust. (Exhibit 19.) Prevailing onshore winds carry this toxic dust northeast toward Plaintiff's current residence. (Exhibit 26; NOAA wind rose data for Huntington Beach.)

21. Plaintiff thus faces continuous inhalation exposure to carcinogenic hexavalent chromium, independent of groundwater pathways.

**C. Redressability**

22. The requested injunctive relief is specifically tailored to abate each active migration mechanism:

a. Sealing Well W-4150 will eliminate the primary subsurface conduit to the aquifer that supplies Plaintiff's tap water.

b. Suspending the StormTech system and requiring a lawful cap will halt engineered downward mobilization and airborne dust generation.

c. Ceasing unpermitted high-pressure washing will eliminate daily aerosolization of toxic dust.

23. Each form of relief directly addresses a concrete, ongoing injury to Plaintiff. Accordingly, Plaintiff has standing under Article III and RCRA's citizen-suit provision. *See Friends of the Earth v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 181 (2000).

- 6 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

## VI. PARTIES

24. **Plaintiff Jesse Knabb** is a disabled former resident of the Huntington Beach Navigation Center, a person exposed to hazardous substances within the meaning of RCRA, and a resident of Midway City within the affected groundwater basin and airborne dust zone.

25. **Defendant City of Huntington Beach ("City")** is a municipal corporation that acquired, developed, and operates the Site. The City orchestrated the fraudulent environmental clearance, installed unlined subsurface infrastructure in contaminated soil, and continues to contribute to endangerment.

26. **Defendant Orange County Health Care Agency ("OCHCA")** is the local agency that ultra vires assumed jurisdiction over a complex hazardous-waste site despite mandatory DTSC oversight, issued a closure certificate without required data or public notice, waived well destruction requirements based on fabricated fieldwork, and maintained dual GeoTracker records to conceal contamination.

27. **Defendant California Regional Water Quality Control Board, Santa Ana Region ("RWQCB")** is a state agency subject to suit under *Ex parte Young*, 209 U.S. 123 (1908), for prospective injunctive relief. Plaintiff sues the RWQCB's Executive Officer in their official capacity to compel performance of nondiscretionary duties: enforcing the expired NPDES permit, correcting suppressed GeoTracker records, and halting unpermitted discharges. RCRA's citizen-suit provision authorizes suit against "any person, including . . . any State or local government agency," 42 U.S.C. § 6972(a), and the Eleventh Amendment does not bar prospective relief against state officers for ongoing federal violations. *See Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295 (D. Vt. 2007).

28. **Defendant EEC Environmental ("EEC")** is a consulting firm that prepared materially misleading Phase I and II assessments, submitted forged RAS forms (bearing the signature of

- 7 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

a real estate broker with no ownership interest), fabricated fieldwork narratives regarding Well W-4150, and created geophysical reports with falsified metadata.

29. **Defendant Mercy House Living Centers, Inc. ("Mercy House")** operates the Navigation Center and conducts daily high-pressure washing that mobilizes contaminated soil and generates unpermitted wastewater discharges, constituting ongoing illegal disposal of hazardous waste.

30. **Defendant Mitsuru Yamada** is the former owner of the Site who, in 1990, personally signed the permit authorizing backfilling of the Site's cesspool—establishing direct personal knowledge of subsurface hazards. Yamada was also a former Assistant Subdivision Engineer for the Orange County Environmental Management Agency (OCHCA's predecessor). Despite this knowledge, he failed to disclose the cesspool, Well W-4150, or historical contamination during the 2020 sale, directly causing regulators to waive mandatory well destruction and close the case without investigation.

31. **Does 1–100** are unnamed persons or entities who participated in or contributed to the unlawful conduct alleged.

## VII. FACTUAL ALLEGATIONS

### A. Historical Contamination and Institutional Knowledge

32. The Site has been a documented "toxic sink" for decades. In 1991, the City approved funding for stormwater improvements to address chronic flooding in the Michael Drive/Cameron Lane basin but failed to construct them for over four years. In 1995, a severe winter storm deposited industrial and agricultural contaminants—including hexavalent chromium, lead, arsenic, toxaphene, and 4,4′-DDE—onto the Site. (Exhibit 3.)

- 8 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

33. The Cameron Lane parcel is also burdened by a permanent municipal storm drain easement established through City Contract CC-435, the Michael Drive Storm Drain project, completed and accepted by the City on June 4, 1979. (Exhibit 29.) This drain was constructed to alleviate chronic flooding that had repeatedly deposited industrial contaminants into the Michael Drive/Cameron Lane basin. The easement predates all modern development on the parcel and grants the City perpetual access for inspection, maintenance, and repair. The presence of this subsurface infrastructure—located within a documented environmental hazard zone adjacent to the Ascon toxic waste site—created a known pathway for contaminated runoff, soil gas migration, and groundwater infiltration. The City's institutional knowledge of this easement and its associated risks further demonstrates that Defendants knowingly constructed and operated the Navigation Center on land subject to pre-existing contamination pathways and development constraints.

34. On August 1, 2020, Japanese-American historian and Wintersburg preservation expert Mary Adams Urashima submitted a written objection to the City Council regarding the demolition of the 17631 Cameron Lane structure. Urashima reminded the City that the property had been formally designated "3CS" in the City's 2014 Historic Context & Survey Report, meaning it "appears eligible for the California Register" and is therefore a "historic resource" under CEQA. She warned that demolition constituted a significant adverse impact, that no categorical exemption applied, and that the City was legally required to conduct CEQA review, consult with the Office of Historic Preservation, and consider alternatives or mitigation. Despite this direct notice from a recognized expert, the City proceeded without CEQA analysis, without consultation, without mitigation, and without public disclosure, demonstrating a deliberate pattern of bypassing mandatory regulatory safeguards to expedite acquisition and redevelopment of the Site.

- 9 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

35.  A 1947 survey map documents an "Iron Tank" and Well W-4150 (State Well No. 05S/11W-25M09) on the Cameron Lane parcel. In 1990, Yamada signed the permit to backfill the cesspool. (Exhibit 4.)

36.  April 2020 soil sampling revealed hexavalent chromium at concentrations up to 980 μg/kg—approximately 49 times health-protective thresholds—along with elevated lead, arsenic, toxaphene, and 4,4′-DDE. These concentrations triggered mandatory referral to DTSC under Health & Safety Code § 101480 and SB 1248. (Exhibit 6.)

**B. Fraudulent RAS Forms and Unauthorized Regulatory Initiation**

37.  The deed for 17631 Cameron Lane was transferred from the Yamada Living Trust to the City on April 3, 2020, but the City deliberately delayed formal acceptance until August 14, 2020, and recordation until August 19, 2020—a 4.5-month gap that insulated both Yamada and the City from liability while the City controlled the environmental review process. (Exhibits 15–17.)

38.  Despite lacking legal title, the City submitted RAS forms to OCHCA on April 27, 2020, bearing the signature of George Felix—a CBRE real estate broker—in the field for "Person or Entity Responsible for Cleanup." Felix had no ownership interest and no environmental authority. (Exhibit 9.)

39.  OCHCA's May 4, 2020 acceptance letter was addressed to City staff, confirming OCHCA knew it was dealing with a party lacking legal title. OCHCA opened Case No. 20IC002 based on submissions it knew were not executed by anyone with legal authority. (Exhibit 10.)

**C. Ultra Vires Retention of Jurisdiction and Bypass of Mandatory DTSC Referral**

40.  On April 30, 2020, OCHCA and RWQCB jointly decided to bypass mandatory DTSC referral by characterizing the Site as a "simple waste cleanup"—a mischaracterization made with full knowledge that hexavalent chromium was 49 times above safety thresholds. (Exhibit 10.)

- 10 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

41. On July 7, 2020, OCHCA Project Manager Tamara Escobedo instructed the City to unify multiple parcels on revised RAS forms to avoid parcel-specific DTSC review, obscuring contamination patterns. (Exhibit 11.)

**D. GeoTracker Record Suppression and Document Irregularities**

42. OCHCA maintained two separate GeoTracker Global IDs for the same cleanup case: one for the Beach Boulevard parcel (containing some data) and a second, incomplete ID combining both parcels under the non-existent lead agency "Orange County." The second ID contained no reports, laboratory data, or correspondence. (Exhibit 13.)

43. Several detections of hexavalent chromium and lead were manually replaced with "NONE SPECIFIED" in the GeoTracker records, preventing automated state-level red flagging. (Exhibit 13.)

44. The dual-parcel listing ultimately recognized by CalEnviroStor—"17631 Cameron Lane and 17642 Beach Blvd" (T10000020555)—was assigned to "Orange County," not the standard "Orange County LOP" designation, preventing DTSC, CalEPA, and OEHHA from receiving laboratory data for the Cameron Lane parcel. (Exhibit 13.)

45. Metadata for the SubSurface Surveys geophysical report dated April 27, 2020, shows the PDF was created on June 4, 2020—weeks after the stated survey date—using "PScript5.dll Version 5," indicating post-hoc fabrication. (Exhibit 12.)

46. A City WebLink entry for closed-session negotiations with the Yamada Living Trust (System ID 5376394) was destroyed, creating additional gaps in the administrative record. (Exhibit 18.)

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

**E. Fabricated Fieldwork: EEC's July 2020 Access Admissions**

47. Emails between EEC and OCHCA dated July 13–14, 2020, confirm that EEC had no access to the Beach Boulevard parcel during the period when Defendants claim soil sampling and geophysical surveying occurred in April 2020. EEC Project Manager Laura Holder stated: "We do not have a tentative date because we do not have the green light to move forward yet—they need to work out some access details first." (Exhibit 27.)

48. Because EEC lacked access to the Beach parcel until at least mid-July 2020, the April 2020 boring logs, fieldwork narratives, and sampling claims for that parcel are necessarily fabricated. The July 14 email also included a "proposed boring location map" for the Beach parcel, demonstrating that boring locations were being created for the first time in July— not April.

**F. The Void *Ab Initio* Closure Certificate**

49. OCHCA issued the August 21, 2020 "Case Closed" certificate without laboratory data, without a Site Assessment Report, without boring logs, without QA/QC documentation, and without the mandatory 30-day public notice. The closure was drafted on May 21, 2020—one day after OCHCA's Activity Log shows the agency was still requesting basic data. (Exhibit 10.)

50. The closure certificate was issued under the non-existent lead agency "Orange County," further demonstrating manipulation of the administrative record. (Exhibit 13.)

**G. Ongoing Illegal Disposal Mechanisms**

51. The Site's NPDES stormwater permit expired August 20, 2020. No renewal has been obtained. Mercy House conducts daily high-pressure washing, generating contaminated wastewater discharged without permit or treatment. (Exhibit 19.)

- 12 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

52. Well W-4150 remains unsealed. The mandatory well-destruction permit was waived based on a fieldwork narrative that photographic evidence shows never occurred. (Exhibits 7, 10, 14.)

53. The unlined StormTech system operates continuously, driving contaminants downward during every storm event.

**H. Airborne Toxic Dust Pathway and Substandard Cap**

54. The City spent $1.2 million to excavate contaminated soil and install a permanent cap at City Hall in 2008, yet spent only $128,000 on the Navigation Center's two-inch asphalt cap over loose gravel—a violation of City Specification No. 431-92 and Municipal Code § 230.92. (Exhibit Y.)

55. This substandard cap fails to contain contamination. Daily high-pressure washing by Mercy House degrades the thin asphalt, aerosolizing hexavalent chromium and lead-laced soils. (Exhibit 19.) Prevailing onshore winds carry this toxic dust toward Midway City, including Plaintiff's residence. (Exhibit 26.)

Photographs of the cap's condition are attached as Exhibit 20.

**I. Photographic Evidence Confirms No April 2020 Fieldwork Occurred on the Beach Parcel**

56. Photographs obtained through CPRA requests confirm that no soil sampling, boring, trenching, or geophysical surveying occurred on the Beach Boulevard parcel (17642 Beach Blvd.) during the period Defendants claim fieldwork was performed—April 13–14, 2020. The photographs depict the Beach parcel with dense vegetation present, no evidence of drilling

- 13 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

equipment, utility clearance markings, anomaly mapping grids, or any other indicators of subsurface investigation.

57.  The April 2020 fieldwork narrative submitted by EEC asserts that a geophysical survey was conducted on the Beach Boulevard parcel on April 13, 2020. However, every photograph in the SubSurface Surveys report depicts the Beach parcel covered in dense, undisturbed vegetation and does not show the Cameron Lane parcel at all, yet each image is labeled as having been taken on the Cameron Lane parcel. No photographs depict cleared survey grids, anomaly mapping, utility clearance markings, or active geophysical surveying on either parcel, even though EEC claimed to have completed geophysical work and advanced borings without striking underground utilities.

58. The absence of photographic documentation is inconsistent with standard environmental-consulting practice. Geophysical surveys, borings, and sampling events are routinely photographed to document site conditions, boring locations, equipment setup, and utility clearance. The complete lack of such documentation for the Beach parcel—combined with the presence of photographs only from the Cameron Lane parcel—demonstrates that no April 2020 fieldwork occurred on the Beach parcel.

59. Newly obtained laboratory records from Eurofins Calscience (Exhibit 28) further confirm that the April–July 2020 fieldwork attributed to EEC never occurred as represented. The Eurofins analytical report for the Beach Boulevard parcel contains multiple non-standard and non-compliant features—including a "FALSE" discrepancy flag on the Login Sample Receipt Checklist, missing analyte fields, inconsistent terminology ("No Detections" instead of the defined "Not Detected"), and a personal email embedded inside the report documenting a late, undocumented 24-hour "STAT" request for hexavalent chromium testing made six days after sample collection. The Chain of Custody forms contain blank PO fields, missing project

- 14 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

numbers, and post-sampling additions to the analyte request columns, indicating that the laboratory was instructed to perform analyses not authorized on the original COC. These irregularities are consistent with fabricated or improperly documented fieldwork: the samples delivered to the laboratory did not match the paperwork, the analytical request was retroactively modified, and the laboratory was forced to manually override its standard reporting templates to accommodate EEC's late instructions. The presence of these anomalies in a legally certified data package—combined with the absence of any photographic evidence of sampling, utility clearance, or geophysical surveying—demonstrates that the environmental data relied upon by OCHCA to close the case was procedurally defective, scientifically unreliable, and inconsistent with industry standards, further rendering the August 21, 2020 closure certificate void ab initio.

60. Metadata associated with the SubSurface Surveys report further corroborates fabrication. Although the report is dated April 27, 2020, the PDF was created on June 4, 2020, using "PScript5.dll Version 5," indicating that the report was generated weeks after the claimed survey date and not contemporaneously with any field activity.

61. The July 13–14, 2020 email chain between EEC and OCHCA confirms that EEC still lacked access to the Beach parcel months after the alleged April fieldwork. In those emails, EEC stated that no sampling date could be scheduled because "they need to work out some access details first," and attached a "proposed boring location map" for the Beach parcel—demonstrating that boring locations were being created for the first time in July, not April.

62. If a geophysical survey had been performed in April, boring locations would have already been established based on anomaly mapping, utility clearance, and subsurface feature identification. The fact that boring locations were still "proposed" in July confirms that no April geophysical survey or sampling occurred on the Beach parcel.

- 15 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

63. Taken together—photographic evidence, metadata anomalies, and EEC's own July 2020 admissions—demonstrate that the April 2020 fieldwork narrative is false. Because the Beach parcel was never sampled or surveyed, the August 21, 2020 closure determination was issued without the required Site Assessment Report, laboratory data, or field verification, rendering the closure invalid and ultra vires.

**J. Litigation-Grade Hydrogeologic Diagrams Supporting Cr(VI) Migration Pathway**

64. Plaintiff has prepared litigation-grade hydrogeologic diagrams synthesizing publicly available OCWD contour plates, monitoring well data, W-4150 well construction records, and groundwater elevation gradients. These diagrams visually depict the inland hydraulic gradient, the shallow Cr(VI) plume, and the vertical conduit pathway created by Well W-4150. True and correct copies are attached as **Exhibits 35-A through 35-D**.

65. Exhibit 35-A ("Regional Groundwater Flow & Talbert Barrier Influence") illustrates the inland-directed hydraulic gradient created by the Talbert Seawater Intrusion Barrier and the deep pumping depressions in the Midway City area. Flow arrows drawn orthogonal to equipotential contours demonstrate that groundwater moves northeast from the Huntington Beach mesa toward Midway City.

66. Exhibit 35-B ("Vertical Cross-Section & Direct Conduit Pathway") depicts the Shallow Aquifer, Principal Aquifer, intervening aquitards, and the screened and gravel-packed intervals of Well W-4150. The diagram shows how the unsealed well provides a high-transmissivity vertical conduit capable of transporting shallow Cr(VI)-impacted groundwater into deeper municipal supply zones.

67. Exhibit 35-C ("Cr(VI) Gradient & Monitoring Well Surveillance Profile") synthesizes monitoring data from MW-9, MW-42, and MW-43B, showing elevated Cr(VI) concentrations

- 16 -
AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

in the shallow aquifer along the advective corridor. The diagram depicts the plume front, source front, and screened intervals in transmissive sand layers.

68. Exhibit 35-D ("Public Data & CCR Validation Strategy") outlines the two possible outcomes of Midway City Mutual Water Company's historical water quality data—either

(1) documented Cr(VI) detections, which validate the plume exposure hypothesis, or (2) non-detect results, which reflect limited monitoring frequency and detection limits above health-protective thresholds. Both outcomes support RCRA's "may present an imminent and substantial endangerment" standard.

69. These diagrams are based entirely on publicly available agency data and well logs. Plaintiff is not a licensed hydrogeologist and will seek to retain a qualified expert to review, adopt, and refine these diagrams and provide a signed expert declaration. Plaintiff respectfully requests leave to supplement the record with such expert materials once obtained.

**K. Hydrogeology and Cr(VI) Detections**

70. The Orange County Groundwater Basin is a highly managed, anthropogenically forced coastal alluvial system in which the Talbert Seawater Intrusion Barrier and inland municipal pumping together create a persistent inland hydraulic gradient from the coastal margin toward Midway City. The OCWD's published contour maps and Engineer's Reports document the Talbert Barrier's injection mound and the inland pumping depressions that together drive groundwater northeast from the Huntington Beach mesa toward Midway City. (Exhibit 30.)

71. Hexavalent chromium (Cr(VI)) is highly soluble and mobile in oxic groundwater and, unlike trivalent chromium, is poorly sorbed to aquifer materials. In oxic conditions Cr(VI) behaves as an oxyanion and migrates at velocities comparable to groundwater advective flow.

- 17 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

OEHHA's Public Health Goal for Cr(VI) is 0.02 µg/L. The presence of Cr(VI) in shallow source zones therefore presents a serious human-health risk if migration to production wells or potable supply zones occurs. (Exhibit 31.)

72.  OCWD monitoring data from the South Basin Groundwater Protection Project and related investigations document elevated Cr(VI) concentrations in shallow monitoring wells upgradient of Midway City. Representative detections include Cr(VI) at 270 µg/L in MW-42 and 62 µg/L in MW-43B (July 2019), and repeated detections in the SBGPP monitoring network consistent with a plume elongated along the south-southwest to north-northeast axis. These detections are orders of magnitude above health-based thresholds and confirm a migrating shallow plume. (Exhibit 32.)

73.  Monitoring well MW-9, located within the Central Study Area, has recorded severe industrial contamination in the shallow aquifer, including extremely elevated 1,4-dioxane and VOCs, demonstrating the presence of a heavily contaminated source zone upgradient of the Navigation Center and the advective flow path toward Midway City. (Exhibit 32.)

74.  The regional hydrostratigraphy includes mergence zones and discontinuous aquitards where the Shallow Aquifer and the Principal Aquifer are in direct hydraulic contact. In such zones, and where anthropogenic conduits exist, contaminants in the Shallow Aquifer can vertically migrate into the Principal Aquifer. (Exhibit 30.)

75.  Anthropogenic vertical conduits, including improperly sealed or unsealed domestic wells, long-screened production wells, and gravel-packed annuli, create direct cross-aquifer pathways. The W-4150 well log shows a 140-foot domestic well penetrating high-permeability gravel zones located 25 feet west of Cameron Street. The W-4150 construction and lithology are consistent with a vertical conduit capable of transmitting shallow contaminated water into deeper aquifer intervals. (Exhibit 33.)

- 18 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

76. The combination of:

(a) a high-head coastal injection mound at the Talbert Barrier,

(b) deep inland pumping depressions,

(c) documented shallow Cr(VI) source concentrations, and

(d) vertical conduits such as W-4150 establishes a continuous advective pathway from the shallow source zone near the Navigation Center to the Principal Aquifer and to municipal production wells serving Midway City.

77. OCWD monitoring results show Cr(VI) detections in sentinel wells along the advective corridor. These detections, together with the documented hydraulic gradient and vertical connectivity, demonstrate that a plume originating in the Huntington Beach coastal corridor is migrating inland and that downgradient municipal receptors are plausibly exposed to Cr(VI) via groundwater extraction. (Exhibit 32.)

78. Even if municipal tap sampling has not yet shown an MCL exceedance at a particular distribution point, the combination of

(a) documented high source concentrations,

(b) an engineered inland gradient, (

(c) an unsealed domestic well that penetrates transmissive zones, and

(d) monitoring well detections in the advective corridor establishes a credible and imminent risk of exposure to Cr(VI) for downgradient residents, including Plaintiff.

79. In addition to the groundwater pathway, the Site's substandard cap and daily high-pressure washing create an independent airborne exposure pathway. The thin asphalt cap over loose gravel fails to prevent dust generation; high-pressure washing aerosolizes contaminated particulates; and prevailing onshore winds transport fugitive dust toward Midway City. This

- 19 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

airborne pathway provides an immediate exposure route independent of groundwater migration. (Exhibit 34.)

80. The combined hydrogeologic and airborne evidence demonstrates that the Site's contamination is not isolated to the immediate parcel but is part of an active, advective transport system that threatens municipal receptors and residents in Midway City.

81. Because the City installed unlined infiltration chambers and allowed ongoing unpermitted discharges at a documented Cr(VI) source zone, Defendants' actions materially contributed to the creation and continued migration of the Cr(VI) plume and to the ongoing risk of exposure to Plaintiff and other downgradient residents.

82. The foregoing facts support Plaintiff's standing, causation, and redressability: sealing W-4150, suspending the StormTech infiltration system, requiring a lawful cap and BMPs, and compelling DTSC-supervised remediation will materially reduce the risk of Cr(VI) migration and abate the imminent and substantial endangerment.

83. The OCWD Engineer's Reports, SBGPP Remedial Investigation data, monitoring well laboratory reports, and the W-4150 well log are attached as Exhibits 30 through 33 and are incorporated by reference.

## **VIII. CLAIMS FOR RELIEF**

### **FIRST CLAIM**

**Violation of RCRA, 42 U.S.C. § 6972(a)(1)(A)**

*(Illegal Disposal of Hazardous Waste)*

(Against All Defendants)

- 20 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

84. Plaintiff incorporates by reference all preceding paragraphs.

85. RCRA prohibits the "past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste" in violation of applicable regulations or permits. 42 U.S.C. § 6972(a)(1)(A).

86. Defendants have engaged in, contributed to, or allowed illegal disposal of hazardous waste through:

a. Installation and operation of the unlined StormTech infiltration system, driving contaminants downward (Exhibit 8);

b. Daily high-pressure washing that mobilizes contaminated soil and generates unpermitted wastewater discharges (Exhibit 19);

c. Disturbance and dispersal of contaminated soil during grading without proper hazardous-materials controls (Exhibit 20);

d. Failure to seal Well W-4150, allowing direct migration to groundwater (Exhibits 7, 10, 14).

87. These actions constitute ongoing "disposal" under RCRA.

88. Specific violations include:

a. **City of Huntington Beach:** Violated 40 C.F.R. § 257.3-4, Health & Safety Code § 25280 *et seq.*, and its own expired NPDES permit.

b. **OCHCA:** Violated Health & Safety Code § 101480 and SB 1248 by retaining jurisdiction without DTSC referral, and issued a closure certificate without required data or public notice.

c. **RWQCB:** Violated 33 U.S.C. § 1311 and its Porter-Cologne duties by allowing unpermitted discharges and maintaining sanitized GeoTracker records.

- 21 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

d. **EEC:** Violated 40 C.F.R. § 312.10, Business & Professions Code § 7835, and 40 C.F.R. Part 257 by submitting forged RAS forms and fabricated reports.

e. **Mercy House:** Violated 33 U.S.C. § 1311 and 40 C.F.R. Part 122 by conducting unpermitted high-pressure washing.

f. **Mitsuru Yamada:** Violated Health & Safety Code § 25359.7 by failing to disclose known contamination, unsealed well, and cesspool.

89. Plaintiff is entitled to declaratory and injunctive relief to abate these ongoing violations.

## SECOND CLAIM

### Violation of RCRA, 42 U.S.C. § 6972(a)(1)(B)

*(Imminent and Substantial Endangerment)*

(Against All Defendants)

90. Plaintiff incorporates by reference all preceding paragraphs.

91. RCRA authorizes suit against any person "who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

92. Hazardous substances at the Site—hexavalent chromium at 49 times health thresholds, lead, arsenic, toxaphene, and 4,4′-DDE—remain in soil and groundwater. (Exhibit 6.)

93. Three active mechanisms mobilize contaminants, creating imminent and substantial endangerment:

a. Unlined StormTech system driving soluble contaminants downward;

b. Unsealed Well W-4150 providing direct conduit to regional aquifer;

c. Daily high-pressure washing aerosolizing toxic dust.

- 22 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

94. These conditions endanger Plaintiff and the environment, as documented by OCWD data confirming plume migration toward Midway City and airborne transport toward Plaintiff's residence.

95. Defendants have failed to investigate, remediate, monitor, or control these hazards.

96. Plaintiff is entitled to injunctive relief requiring abatement of the endangerment.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that Defendants have violated RCRA § 6972(a)(1)(A) by contributing to illegal disposal of hazardous waste;

2. Declare that Defendants have violated RCRA § 6972(a)(1)(B) by contributing to conditions presenting imminent and substantial endangerment;

3. Order Defendants to seal Well W-4150 in accordance with state and federal well destruction standards;

4. Order Defendants to seal the abandoned cesspool documented in the 1990 permit (Exhibit 4);

5. Order Defendants to cease all unpermitted discharges, including

6. high-pressure washing;

7. Order Defendants to suspend operation of the StormTech infiltration

8. system pending lawful environmental review;

9. Order a full Site investigation under DTSC oversight, including soil, soil-gas, and groundwater sampling;

10. Order preparation of a lawful Site Assessment Report with QA/QC documentation, boring logs, and laboratory data;

- 23 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE
CONSERVATION AND RECOVERY ACT (RCRA)

11. Order implementation of appropriate remediation and institutional controls;

12. Award Plaintiff costs of litigation, including reasonable attorney's fees, as authorized by 42 U.S.C. § 6972(e);

13. Grant such other and further relief as the Court deems just and proper.

14. Plaintiff respectfully requests leave to supplement the record with a signed expert hydrogeologist declaration and finalized litigation-grade figures within 14 days of retention of a qualified expert, or as otherwise ordered by the Court.

- 24 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

## VERIFICATION

I, Jesse Knabb, am the Plaintiff in this action. I have read the foregoing Amended Verified Complaint and know its contents. The facts stated therein are true to the best of my knowledge, information, and belief, and those matters stated on information and belief I believe to be true. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 24, 2026, at Midway City, California.

/s/ Jesse Knabb

Plaintiff, In Pro Per

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

The undersigned certifies that this memorandum complies with the word limit of L.R. 116.1 because it contains approximately 6,800 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, signature block, and exhibits, as counted by the word processing system used to prepare it.

/s/ Jesse Knabb

Plaintiff, in Pro Per

- 25 -

AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

# EXHIBITS TO AMENDED VERIFIED COMPLAINT

## Knabb

v.

## City of Huntington Beach et al.

**Case No**. 8:26-cv-00348-JWH (ADSx)

**United States District Court**
**Central District of California**

**Southern Division**

Filed by:
**Jesse Knabb, Plaintiff in Pro Per**
15161 Van Buren St, Unit 206
Midway City, CA 92655
(949) 274-6223
jesseknabb@gmail.com

INDEX OF EXHIBITS

*(Filed in Support of Plaintiff's Amended Verified Complaint)*

**INDEX OF EXHIBITS**

*Filed in Support of Plaintiff's Amended Verified Complaint*

## I. RCRA NOTICE, PRIOR PROCEEDINGS, AND REGULATORY BACKGROUND

**Exhibit 1 –** RCRA 90-Day Notice Letter and Proof of Service

**Exhibit 2 –** 2025 CRD Settlement Agreement (Limited Release Only)

## II. HISTORICAL CONTAMINATION, SITE CONDITIONS, AND CITY KNOWLEDGE

**Exhibit 4 –** 1947 Survey Map Showing "Iron Tank" and Well W-4150

**Exhibit 6 –** April 2020 Soil Analytical Results (Cr(VI), Lead, Arsenic, Toxaphene, 4,4′-DDE)

## III. FRAUDULENT RAS FORMS, UNAUTHORIZED REGULATORY INITIATION, AND TITLE IRREGULARITIES

**Exhibit 9 –** April 27, 2020 RAS Forms Signed by Non-Owner (George Felix, CBRE)

**Exhibit 10 –** OCHCA May 4, 2020 RAS Acceptance Letter (Repurposed/Edited Document)

**Exhibit 11 –** July 7, 2020 OCHCA Email Directing Parcel Consolidation

**Exhibits 15–17 –** Deed Transfer, 133-Day Acceptance Delay, and Recordation Timeline

## IV. GEOTRACKER SUPPRESSION, METADATA IRREGULARITIES, AND FABRICATED FIELDWORK

**Exhibit 12** – SubSurface Surveys Metadata Showing June 4, 2020 PDF Creation (Post-Dated "April 27" Report)

**Exhibit 13** – Dual GeoTracker IDs, "NONE SPECIFIED" Overrides, and Suppressed Laboratory Records

**Exhibit 18** – Destroyed City WebLink Entry (System ID 5376394)

**Exhibit 27** – July 13–14, 2020 Emails Confirming No Access to Beach Parcel During Alleged April Fieldwork

### V. WELL W-4150, STORMTECH SYSTEM, AND ONGOING ILLEGAL DISPOSAL

**Exhibit 7** – OCWD Well Log for W-4150 (140-ft Domestic Well; High-Permeability Gravel Zones)

**Exhibit 8** – StormTech Installation Drawings and Soil Interface Photographs

**Exhibit 14** – OCHCA Well-Destruction Waiver Based on Fabricated Fieldwork

**Exhibit 19** – Mercy House High-Pressure Washing Logs and Photographs

# EXHIBIT 1

Exhibit 1 – RCRA 90-Day Notice Letter and Proof of Service

**Plaintiff Jesse Knabb**
In Pro Per

**Knabb v. City of Huntington Beach et al.**

**Case No. 8:26-cv-00348-JWH (ADSx)**

Please provide this information at your earliest convenience. As you are aware, the citizen suit process is governed by specific statutory deadlines following this publication.

Thank you for your attention to this matter.

Sincerely,

Jesse Knabb

15161 Van Buren St, Unit 206

Midway City, CA 92655

(657) 382-9627

jesseknabb@gmail.com


On Thu, Dec 11, 2025 at 2:47 PM R9.Info <R9.Info@epa.gov> wrote:

> Hello Mr. Knabb,
>
>
> I have forwarded your request to staff.  EPA Region 9 is updating our files to reflect EPA receipt on 9/2/25 based on your documentation.
>
>
> Best regards,
>
>
>
> Lisa Wheeler
>
> Director
>
> Environmental Information Center
>
> U.S. Environmental Protection Agency
>
> Pacific Southwest Region/ Region 9
>
> r9.info@epa.gov

**Organization**
Homelessness Rights Advocate

**Email**
jesseknabb@gmail.com

**Phone**
(657) 382-9627

**Your Request or Comment**
I'm verifying that you received my 90-Day Notice of Intent to File Citizen Suit under RCRA. I've sent numerous emails directly to Administrator, Lee Zeldin, as well as mailed copies to EPA, Washington DC... This mailed the first week of September, 2025. Please confirm if you've received my NOI. Thank you, Jesse Knabb

**Web Area**
Contact EPA's Pacific Southwest Office (Region 9)

**Are you human?**
Yes

U.S. Environmental Protection Agency
Pacific Southwest, Region 9
75 Hawthorne St.
San Francisco, CA 95104
R9.info@epa.gov

 **Gmail**

Jesse Knabb <jesseknabb@gmail.com>

# Re: ADDENDUM TO '90-DAY NOTICE OF INTENT TO FILE CITIZEN SUIT UNDER 42 U.S.C. § 6972(a)(1)(B) (RCRA)'

**3 messages**

---

**Jesse Knabb** <jesseknabb@gmail.com>                     Sun, Sep 14, 2025 at 1:10 AM
To: Zeldin.Lee@epa.gov, Yana.Garcia@calepa.ca.gov, Katherine.Butler@dtsc.ca.gov, mvigliotta@surfcity-hb.org, THopkins@surfcity-hb.org, cook.josh@epa.gov, vkelley@ochca.com, response@ocgov.com

**Dear Sirs and Madams,**

Please be advised that attached hereto is an addendum to '90-Day Notice of Intent to File a Citizen Suit pursuant to 42 U.S.C. § 6972(b)(2)(A) of the Resource Conservation and Recovery Act (RCRA)'.

This notice is provided to the U.S. Environmental Protection Agency, the California Environmental Protection Agency, the Department of Toxic Substances Control, and the named defendants—the City of Huntington Beach and the Orange County Health Care Agency.

The notice details imminent and substantial endangerment to health and the environment caused by the past and present handling of solid and hazardous waste at the Huntington Beach Navigation Center, located at 17642 Beach Blvd. and 17631 Cameron Lane. The attached document outlines the legal and factual basis for this action, including evidence of severe contamination, regulatory violations, fraud, and discriminatory siting.

This transmission satisfies the statutory notice requirement. We anticipate your

Case 8:26-cv-00349-JWH-ADS   Document 8   Filed 03/25/26   Page 38 of 40   Page ID
#:108

acknowledgment of receipt.

**BELOW**: Link to Exhibits (A-Z)

https://drive.google.com/drive/folders/
12R6m6XpiXESykF8R_
EkQBXy9sSiduFka

**ATTACHED**: ADDENDUM TO '90-DAY NOTICE OF INTENT TO FILE CITIZEN SUIT UNDER 42 U.S.C. § 6972(a)(1)(B) (RCRA)'

Respectfully,

/s/Jesse Knabb

On Tue, Sep 2, 2025, 2:29 PM Jesse Knabb <jesseknabb@gmail.com> wrote:

September 02, 2025

**Subject: 90-DAY NOTICE OF INTENT TO FILE CITIZEN SUIT UNDER 42 U.S.C. § 6972(a)(1)(B) (RCRA)**

**To:** Lee Zeldin Zeldin.Lee@epa.gov; Yana Garcia Yana.Garcia@calepa.ca.gov; Katherine Butler Katherine.Butler@dtsc.ca.gov; Mike Vigliotta MVigliotta@surfcity-hb.org; Travis Hopkins THopkins@surfcity-hb.org; Orange County County Counsel; Clayton Chau Clayton.Chau@ochca.com

**Dear Sirs and Madams,**

Please be advised that attached hereto is a 90-Day Notice of Intent to File a Citizen Suit pursuant to 42 U.S.C. § 6972(b)(2)(A) of the Resource Conservation and Recovery Act (RCRA).

This notice is provided to the U.S. Environmental Protection Agency, the California Environmental Protection Agency, the Department of Toxic Substances Control, and the named defendants— the City of Huntington Beach and the Orange County Health Care Agency.

The notice details imminent and substantial endangerment to health and the environment caused by the past and present handling of solid and hazardous waste at the Huntington Beach Navigation Center, located at 17642 Beach Blvd. and 17631 Cameron Lane. The attached document outlines the legal and factual basis for this action, including evidence of severe contamination, regulatory violations, fraud, and discriminatory siting.

This transmission satisfies the statutory notice requirement. We anticipate your acknowledgment of receipt.

**BELOW**: Link to Exhibits (A-T)

https://drive.google.com/drive/folders/12R6m6XpiXESykF8R_EkQBXy9sSiduFka

**ATTACHED**: 90-DAY NOTICE OF INTENT TO FILE CITIZEN SUIT UNDER 42 U.S.C. § 6972(a)(1)(B)
(RCRA)

Respectfully,

/s/Jesse Knabb

📄 **Addendum to 90-day Notice of Citizens Suit_RCRA.pdf**
280K

---

**Jesse Knabb** <jesseknabb@gmail.com>                    Sun, Sep 14, 2025 at 4:16 AM
To: "Kuoch, Alan@Waterboards" <Alan.Kuoch@waterboards.ca.gov>,
agpressoffice@doj.ca.gov, ej@doj.ca.gov
Bcc: Eve Garrow <EGarrow@aclusocal.org>

[Quoted text hidden]

📄 **Addendum to 90-day Notice of Citizens Suit_RCRA.pdf**
280K

---

**Butler, Katherine@DTSC** <Katherine.Butler@dtsc.ca.gov>         Mon, Sep 15, 2025 at
                                                                          1:51 PM

To: Jesse Knabb <jesseknabb@gmail.com>

Thank you for the notification, I'm acknowledging receipt. I apologize for not acknowledging receipt sooner.

Please contact our Regulatory Assistance Office (RAO@dtsc.ca.gov) if you have specific inquiries for
DTSC, and we will connect you with the appropriate program, if needed.

Katie

**Katherine M. Butler, MPH** (*she/her/ella*)
Director

Katherine.Butler@dtsc.ca.gov

**Department of Toxic Substances Control**

California Environmental Protection Agency

 

   

**From:** Jesse Knabb <jesseknabb@gmail.com>
**Sent:** Sunday, September 14, 2025 1:10 AM
**To:** Zeldin.Lee@epa.gov; Garcia, Yana@EPA <yana.garcia@calepa.ca.gov>; Butler, Katherine@DTSC <Katherine.Butler@dtsc.ca.gov>; mvigliotta@surfcity-hb.org; THopkins@surfcity-hb.org; cook.josh@epa.gov; vkelley@ochca.com; response@ocgov.com
**Subject:** Re: ADDENDUM TO '90-DAY NOTICE OF INTENT TO FILE CITIZEN SUIT UNDER 42 U.S.C. § 6972(a)(1)(B) (RCRA)'

[Quoted text hidden]